VALLE, *Appellant*, v. PICTON.

1. **Practice in Supreme Court**: STATUTE. The Supreme Court will not reverse the judgment of the lower court, unless it believes error was committed against the appellant or plaintiff in error, materially affecting the merits of the action. R. S., sec. 3775.

2. **Attorney and Client**: AUTHORITY TO BEGIN SUIT. An affidavit, filed in support of a motion made by the defendant to dismiss on the ground of the want of authority on the part of plaintiff's attorney to begin the suit, which states only affiant's belief in the grounds of the motion, does not tend to overcome the presumption arising from the professional obligation of the attorney, and such motion may be summarily overruled.

3. **Practice**: CONTINUANCE. The discretion of the trial court in refusing to grant a continuance will not be interfered with by the Supreme Court, unless it appears to have been manifestly abused.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Boyle, Adams & McKeighan* for appellant.

The court of appeals erred in reversing the judgment of the circuit court. (1) Because the instruction on which the court reversed the judgment stated the law. (2) There was no evidence in the record tending to show, either that Judge Clover, purporting to act for Mrs. Valle, the appellant, ever, in fact, made the alleged agreement set up in the answer as a defence to the action, or that Mrs. Valle ever gave Judge Clover, or any other person, authority to make such an agreement, or that she in person ever made such an agreement, and hence it is wholly immaterial whether said instruction, abstractly, is the law or not, since respondent was not entitled, under the evidence, to any instruction on the subject, having utterly failed to introduce any evidence

tending to sustain his defence. Section 3775, Revised Statutes, provides that the Supreme Court shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant, or plaintiff in error, and materially affecting the merits of the action. *State v. Burr*, 31 Mo. 108; *Otto v. Bent*, 48 Mo. 23. (3) The verdict of the jury was for the right party, and should stand, even though the court should be of the opinion that the instruction complained of was erroneous. *Nelson v. Foster*, 66 Mo. 381; *Galbreath v. City of Moberly*, 80 Mo. 484. (4) If by any stretch of the imagination it can possibly be held that the respondent offered any evidence to sustain his answer, then it must be held that the alleged agreement is shown by the same testimony to have been against public policy and void. (5) Neither the first nor third assignments of error of respondent in the court of appeals, as to correction of record, and continuance, were good ; and, therefore, this court should reverse the judgment of reversal of the court of appeals, and affirm the circuit court.

*J. M. Holmes* and *E. A. B. Garesché* for respondent.

(1) The trial court erred in overruling motion to dismiss the cause filed by respondent, and erred, also, in overruling the motion to correct the record. Weeks on Attorneys at Law, sec. 200. After the making of a motion to dismiss, because of his lack of authority to institute the suit, if the attorney fails to show his authority, the court should dismiss the suit. Weeks on Attorneys at Law, sec. 214; *Turner v. Caruthers*, 17 Cal. 433; *Fry v. County, etc.*, 14 Ill. 132; *Keith v. Wilson*, 5 Mo. 439. (2) The trial court erred in giving, of its own motion, instructions not warranted by the evidence, and in refusing improper instructions offered by respondent. If, in consideration of respondent's

Valle v. Picton.

promise to convey, appellant agreed, upon the execution of the conveyance, to pay the sum of eight thousand and five hundred dollars, and release him from the indebtedness sued for herein, one promise was a sufficient consideration for the other, and should be upheld. 1 Parsons on Contracts, 470 ; *Miss. Bk. v. Sabin*, 43 Vt. 329 ; *Moss v. Green*, 41 Mo. 389. (3) The trial court erred in overruling respondent's application for a continuance. The discretion of a trial judge in a matter of continuance must be a sound and reasonable one, not mere caprice, and when a proper case has been made for a continuance, it is error to refuse it. *Barnum v. Adams*, 31 Mo. 532.

NORTON, C. J.—This suit was instituted in the circuit court of the city of St. Louis, on the eighteenth of March, 1882. The petition contains three counts, the first two of which are based on promissory notes of the defendant, and the third is for recovery of money paid by plaintiff for defendant's use. On the twenty-eighth of November, 1882, defendant filed an amended answer, admitting the execution and delivery of each of the notes set up in the petition, and the payment by plaintiff, at defendant's request, of the note mentioned in the third count. The answer, as a defence to the several causes of action sued on, set up that one Zoe Valle Picton, daughter of plaintiff, and formerly wife of the respondent, at the June term, 1881, of the circuit court of St. Louis, instituted a divorce suit against respondent ; that respondent filed an answer to the plaintiff's petition for divorce, and also a cross-bill ; that, during the pendency of the suit, the respondent and appellant entered into an agreement by which the appellant agreed to cancel, and surrender up to respondent, the notes described, and to release him from all liability on account of the same, and, in addition, to pay to the respondent the sum of eight thousand and five hundred

dollars in cash upon the execution of a conveyance by respondent to said Zoe Valle Picton, at the termination of said suit, whether the decree rendered in said divorce suit should be in favor of respondent, or of his said wife, of all of his marital rights, claims, and demands; of all his rights, claims, and demands, of any kind whatsoever, in, and to, the property of the said Zoe Valle Picton; that, in consideration of said promises on the part of the appellant, the respondent agreed to execute and deliver said conveyance whenever said suit should be terminated. At the termination of said suit, in accordance with the terms of said agreement, he executed and delivered a conveyance, by which he did convey to said Zoe Valle Picton, all the rights, claims, and demands, of every kind and nature, which he had in said property; that the appellant, in pursuance of said agreement, paid to the respondent said sum of eight thousand and five hundred dollars; but, through accident, mistake, or oversight, failed to cancel and surrender up said notes, as required by the terms of said agreement.

Replication was filed to this answer, and on the trial of the case, in November, 1883, judgment was rendered for plaintiff, which, on defendant's appeal to the St. Louis court of appeals, was reversed, and the cause remanded, on the sole ground of an error committed by the court in giving an instruction of its own motion. The case is before us on plaintiff's appeal from said judgment of reversal. While it may be conceded that the said instruction is erroneous, in so far as it comes in conflict with the rule that a promise conditioned upon the conveyance to the promisor of a possible interest, which he believes the promisee has, but which the latter does not claim, is supported by a sufficient consideration, we are, nevertheless, of the opinion, owing to a total failure of evidence, on the part of the defendant, to establish so much of his answer as set up the defence that

plaintiff agreed to deliver up and cancel the notes sued upon, at the termination of the divorce suit, that the judgment of the circuit court should not be disturbed for error committed in giving the instruction condemned by the court of appeals.

The evidence offered to sustain the alleged agreement is as follows : The defendant testified, in his own behalf, that, during the pendency of the divorce suit between himself and wife, he had no conversation with the plaintiff, Mrs. Valle, but that he did have a conversation, at his office, in May, 1881, with Judge Clover, who was her attorney in the divorce suit, which she had brought against him, in which " Judge Clover spoke to me about his client's friends helping me, financially, if I would withdraw certain allegations in the pleadings that my attorneys had proceeded to make. I spoke up and told him that I would prefer to leave those matters to my attorney, A. J. P. Garesché, who had all these matters in charge ; that I would not speak of, or enter into, any agreement, without Mr. Garesché's consent, or without his knowledge ; he tried to get me to fix an amount—to commit myself to some amount. I told him I did not want to make any money out of it, but simply wanted to pay some obligations I had contracted during the marriage, and to be released from all connection with the family, whatever. He then stated that I owed Mrs. Valle a large sum of money, and the agreement would wipe out all that, and that I could have something to start with, and the whole thing would be settled quietly ; there was a proposal to make a cash payment ; I refused to consider anything of that kind, but referred him to my attorney, and told him my attorney would settle all matters. Judge Clover stated that whatever arrangement was made, that I would be expected to sign a deed releasing all my right, title, and interest, in my wife's estate. I told him I referred him, in all these matters, to my attorney, without committing myself to any line

of action; I had no other conversation with Clover till after the decree of divorce was rendered, when he approached me and said when I signed the deed the money would be paid." On cross-examination, witness stated: "I referred Judge Clover to my attorney all through the conversation. I told him I was not at liberty to enter into any agreement with him without consulting my attorney; that he had the matter in charge." He further stated: "I refused, then and there, to name the terms, amount, or anything else. I thought my attorney was the proper person to settle the matter."

Mr. A. J. P. Garesché, who was defendant's attorney in the divorce suit, testified to the effect that Mr. Picton wanted to set up a defence in the divorce suit, which he opposed being made, and obtained permission to confer with Judge Clover to stop it, and see if they could not make an arrangement, which, while it would not be collusion, would sweep away from the public the scandalous matter, and bring the parties to a quiet settlement; that he urged upon Clover that it was proper to arrange it, and avoid the scandal; that Clover told him the money part would have to be arranged by Mrs. Valle, the mother of Mrs. Picton; that he suggested to Clover that the estate was a large one; that Picton was in straightened circumstances; that he was surrendering his interest in his wife's estate, which was reputed to be very large; that it was but right to allow him something and settle the matter; that he offered to take ten thousand dollars, and eight thousand five hundred dollars was finally agreed upon, and the amount deposited in the hands of Finkelnburg, to be paid over to Picton on the termination of the divorce suit, and upon the execution, by him, of a deed releasing all interest in the present or future estate of Mrs. Picton; that the divorce suit terminated in a decree divorcing Mrs. Picton; that, upon the execution of the release, the money was paid

over to Picton by Finkelnburg, in the presence of Clover and witness.

It does not appear that, at the time this money was paid over, any demand was made for the delivery and cancellation of the notes in suit, or that anything was said concerning them, or any indebtedness of Picton to Mrs. Valle. Mr. Garesché further testified that he would not tell exactly what passed; that the money to be paid was to be put in such shape that if the divorce was carried through, avoiding this scandal, then the money should be paid right over, without any trouble of creditors interfering; it was not put in as against Mrs. Valle's debt, for there was no mention that the debt was ever to be enforced; "certainly, Judge Clover did not mention that debt; never told me it was represented by notes, or I know what I should have done."

On the part of defendant, Judge Clover testified that he was Mrs. Picton's attorney in the divorce suit; that Mr. Garesché, a few days before the return term, came to him with an answer sworn to by Picton, which he had prepared, setting up as a defence that Mrs. Picton had refused to perform the duties of a wife; that Garesché said, Mrs. Valle, the mother, is able to pay, and she ought to pay to avoid the filing of any such answer, and the disgrace which would follow, and which answer Garesché said could be fully substantiated; that witness then asked Garesché how much money Picton wanted to withhold by the answer, to which he replied: "Mrs. Valle is a lady of ample means, Mr. Picton has been unfortunate, and if his wife insists on having a divorce from her husband, they ought to pay; Mr. Picton needs ten thousand dollars to pay off his debts;" that Garesché then said, "I will not file the answer till I hear from you. If we can make the arrangement I will withhold the answer, and the parties can get a divorce upon another ground. I will file a cross-bill for Picton and allege that Mrs. Picton had abandoned and

deserted him for a period of more than two years with-
out just cause. It makes no difference which party gets
the divorce as long as they are divorced." Witness fur-
ther testified that the next day he saw Picton at his
office, and asked him how much money he wanted, to
which Picton did not respond directly, but spoke of his
condition, and referred him to Mr. Garesché, his attor-
ney; that he had but one conversation with Picton at
his office, and neither in that conversation, nor in any
other, did he say anything about the notes in suit or the
surrender or cancellation of them, nor did he, at any
time, say anything about any indebtedness from him to
Mrs. Valle; that, after this conversation with Picton,
Mr. Garesché agreed to withhold the answer, and that
witness, in the meantime, wrote to Mrs. Valle, then in
Europe, who replied, authorizing the payment of ten
thousand dollars, on receipt of which he sent for Gar-
esché, and the sum of eight thousand five hundred dol-
lars was agreed upon as the sum to be paid to save the
scandal and newspaper publication; that nothing was
ever said by either Mr. Garesché or himself of the notes
in suit, or any other indebtedness, or their surrender or
discharge of any indebtedness; that, on the contrary,
after this suit was brought, Mr. Garesché said that if he
had known of the existence of these notes he would have
required their surrender. Witness further testified that
he never had any authority of any kind to surrender or
cancel the notes, or any other indebtedness of Picton to
Mrs. Valle.

There is nothing in this evidence showing or tend-
ing to show the agreement, set up in the answer,
that the notes in question were to be delivered up and
cancelled. It is clear that no such agreement was made
with Picton, for he swears that he refused to enter into
an agreement, or commit himself to any terms, but re-
ferred Clover to Garesché, his attorney; we think it
equally clear that no such agreement was made with

Garesché, for he swears that he knew nothing of the existence of the notes till after suit was brought, and Clover not only swears that no such an agreement was made, but also swears that he had no authority, whatever, to make any such agreement. Applying to this case, section 3775, Revised Statutes, which provides that the Supreme Court shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action, we hold that, while the instruction given by the court of its own motion, is subject to the criticism made by the court of appeals, the error committed did not, in our judgment, affect the merits of the action. It may also be said that, in view of the evidence of Mr. Garesché, that if the matter averred by the agreement had been set up and established, it would have been a good and perfect defence to the divorce suit, the question might well arise, which it is not necessary to answer ( in the view we have taken of the case ), whether the court, had the agreement been established, would not have been justified in refusing to lend its aid to enforce it.

It also appears that defendant filed a motion to dismiss the cause, on the ground that the suit was instituted without the authority of plaintiff. This motion was accompanied by the affidavit of defendant, stating that "he had good reason to believe, and does believe, and does so aver, that the cause has been begun by H. A. Clover, without the knowledge, sanction, or authority of plaintiff, and against her wishes, and he does believe and aver that if advised thereof she would not sanction the same." The motion was overruled on the day it was filed. It was held, and, we think, properly, by the court of appeals ( 16 Mo. App. 178 ), that no error was committed in this, because the affidavit, which only stated the belief of the affiant, did not tend to overcome the presumption arising from the professional obliga-

tion of the attorney, and might be summarily disposed of, and that such affidavit did not fall within the principle of the case of *Keith v. Wilson*, 6 Mo. 439, because it stated no specific facts, from which the court itself might be induced to doubt the attorney's authority to appear for the party. In the case above referred to there was a complete showing of such facts.

The action of the court, in overruling defendant's application for a continuance, which was asked for in order to procure the evidence of Mrs. Valle, who was then in Europe, and had been for some months, is also assigned for error. Mrs. Valle resided in St. Louis, and her deposition could have been taken before her departure and no reason is given why it was not done, nor is it stated that defendant did not know or have any information of her intention to leave St. Louis. This suit was brought in March, 1882, and was tried in November, 1883. We have repeatedly held that the discretion of the circuit judge, in refusing to grant a continuance, will not be interfered with, unless it appears that it has been manifestly abused. *Leabo v. Goode*, 67 Mo. 126 ; *State v. Burns*, 54 Mo. 274.

The judgment of the court of appeals is hereby reversed and that of the circuit court affirmed, and the cause remanded to the St. Louis court of appeals, with instructions to enter up judgment in conformity with this opinion. All concur.