J. S. SPEER, Respondent, v. T. E. BURLINGAME et al., Appellants.

Kansas City Court of Appeals, February 4, 1895.

1. **Trial Practice**: CHANGE OF VENUE: APPEARANCE. One of the defendants, over the objection of his codefendants, applied for a change of venue and the case was sent to J. county, where the objecting defendants moved to remand, which was overruled; they then applied for a change of venue, which was overruled; and they then appeared to the trial on the merit. *Held:*

> (1) That they could not object to the jurisdiction of the circuit court.

> (2) That their application for a change of venue amounted to an appearance.

> (3) That, one change of venue having been granted already, their objection was properly overruled.

2. ———: RECEIVING BANK DEPOSITS: SEVERANCE. A petition in a case against bank officers and directors for receiving deposits is *held*, to state but one issue between the plaintiff and defendants and was not one authorizing a severance; and, had it been, the discretion of the court in refusing it does not seem to have been abused.

Speer v. Burlingame.

3. **Evidence**: BY-LAWS OF DEFUNCT BANK. *Held*, defendants can not object to plaintiff's reading a deposition of a bank assignee taken by themselves in which he swears that certain by-laws are the by-laws of the bank; as the bank is defunct it has no officers to certify its by-laws and its records under an assignment are in the custody of the circuit court of another county.

4. ——: ——: KNOWLEDGE OF OFFICERS. By-laws defining the duties of officers of a bank are admissible in an action against them for receiving deposits with knowledge of insolvency, since they tend to prove such knowledge.

5. ——: RECEIVING DEPOSITS: ACTUAL KNOWLEDGE. Actual knowledge, like any other fact, may be proved by direct evidence or inferred from facts and circumstances, but, whether proved in either way, it is actual knowledge.

6. **Appellate Practice**: EVIDENCE: EXCEPTION. Where there is no exception saved to the admission of evidence, the appellate court can not review such admission.

7. **Evidence**: RECEIVING DEPOSITS: EXPERT'S OPINION. In an action for receiving deposits with knowledge of insolvency, an expert's opinion as to the ease of ascertaining a bank's condition, is improper evidence; but its admission in this case is not prejudicial.

8. ——: ——: DEFENDANTS' DECLARATIONS. Declarations of defendants in respect to the condition of the failed bank made after its failure are *held*, inadmissible.

9. ——: ——: REFUSED OFFERS FOR STOCK. The refusal of the court to admit evidence showing that defendants had refused more than par for their stock before the failure of the bank, is possible error; but, as the court later on permitted the defendants to testify to such offers the ruling was harmless.

10. **Trial Practice**: EVIDENCE: REMARKS OF THE COURT. Certain remarks of the trial judge in admitting certain evidence are *held*, harmless.

11. **Appellate Practice**: THREE COUNTS: GENERAL VERDICT: MOTION: INSTRUCTION. Appellate courts will not reverse a judgment because there is not a finding on each count, unless the attention of the lower court was specially called to the matter by an appropriate motion, which appears not to have been done in this case, and this question in this case comes before the appellate court only by reason of an instruction which was duly excepted to; and it is *held*, that the defendants had the right to have the jury pass separately on each count of the petition.

Speer v. Burlingame.

12. **Banks and Banking:** RECEIVING DEPOSITS: PRESUMPTION OF LAW: EVIDENCE. In an action by a depositor against the officers of a bank for receiving his deposits with knowledge of its insolvency, the plaintiff makes a *prima facie* case by evidence tending to establish the insolvency and summoning to his aid the presumption of law that defendants had knowledge of the insolvency and assented to the reception. Then, if the defendants testify to their ignorance of the insolvency and supplement it with evidence of corroborating facts and circumstances, the burden is seemingly shifted back to the plaintiff; and if he replies showing the opportunity of the defendants to know, coupled with other facts and circumstances, that it is the duty of the jury to weigh the evidence and decide according to its weight, and in this process the presumption of law loses all that it had of a mere arbitrary power; but, if on the entire case the evidence was equally balanced, the presumption would preponderate the scale in favor of the plaintiff and the jury should give the presumption whatever probative force they deem it entitled to. Instructions on this question uncondemned.

13. ———: ———: ASSENT: INSTRUCTION. An instruction that if the bank was doing a general banking business and soliciting deposits with the knowledge and assent of defendants, then the jury might infer assent to plaintiff's deposit, while authorizing a correct inference is perhaps improper, since the law presumes the jury more competent to draw an inference than the judge.

14. **Instruction:** COVERING GROUND ALREADY COVERED. It is not improper to refuse instructions where the other instructions present a full and fair expression of the whole law.

*Appeal from the Jasper Circuit Court.*—HON. W. M. ROBINSON, Judge.

REVERSED AND REMANDED.

*T. J. Delaney* and *Goode & Cravens* for appellants.

(1) The change of venue from Greene county as to appellants, against their protest, was error. It is doubtful if the venue of a civil case can be changed at all on the application of one of several defendants. It is certain that it can not be as to those not applying, if they resist it. *Zeller v. Martin,* 54 N. W. Rep. 330; *Walcott v. Walcott,* 32

Wis. 63; *Rupp v. Swineford*, 40 Wis. 28; *Levy v. Martin*, 48 Wis. 330; *Jacubeck v. Hewitt*, 61 Wis. 96; *Sailly v. Hutton*, 6 Wend. (N. Y.), 508; *Legg v. Dorsheim et al.*, 19 Wend. (N. Y.), 700; *Pieper v. Land Co.*, 56 Cal. 173; *Remington S. M. Co. v. Cole*, 62 Cal. 311; *Welling v. Sweet*, 1 How. Pr. (N. Y.), 156; *Simmons v. McDougall*, 2 How. Pr. (N. Y.) 77; *Sheman v. Gregory*, 42 How. Pr. (N. Y.), 481; *Whitaker v. Reynolds*, 14 Bush (Ky.), 616; *Holland v. Johnson*, 80 Mo. 34; Anonymous, 2 Chit. 417; *Paters v. Banta*, 22 N. E. Rep. 96. (2) The case should have been remanded to Greene county upon the motion of appellants. The venue having been improperly changed as to them, the Jasper circuit court acquired no jurisdiction. The objection was not waived by the trial. *Ferguson v. Davis Co.*, 51 Iowa, 220. (3) Under the circumstances of this case it was prejudicial error to refuse these appellants separate trials. This matter is addressed to the sound discretion of the court, we know, but if such discretion is abused it is ground for reversal. *Hunt v. Railroad*, 14 Mo. App. 161; *Hunt v. Railroad*, 89 Mo. 607; *Colgrove v. Railroad*, 6 Duer, 430. (4) Numerous errors were committed in the admission and exclusion of evidence. *First*. The two by-laws. *Second*. Sanford's testimony as to the contents of the appraisement was incompetent. *Third*. Petition to compromise certain indebtedness. *Fourth*. The testimony of Newman as to conversation Lincoln and Jenkin had with him at the time the bank failed was proper. These conversations were in the nature of verbal acts of said defendants. 1 Greenleaf on Evidence [14 Ed.], sec. 108. *Fifth*. The cross-examination of the witness Heffernan was improper as to examining bank. Defendants excepted to this cross-examination. *Sixth*. Defendants offered to prove, by Peale *et al.*, he tried to buy stock in the bank from

Lincoln at one-twenty. Unfortunately the jury may have disbelieved the defendants, when they would have credited the disinterested witnesses Peale and Bradley. *Seventh.* The court erred in excluding the evidence of Woodward, as to what Jenkin said to Newman, when Jenkin found out how much Burlingame and others owed the bank. This was *res gestæ. Tel. Co. v. Henderson,* 18 Am. St. Rep. 140; *Hinchcliffe v. Koontz,* 121 Ind. 403; *Hemmingway v. Railroad,* 72 Wis. 42. (5) The remarks of the trial judge that he admitted certain testimony as "an apology for inattention on the part of the directors," etc., constitute glaring error. 1 Thompson on Trials, sec. 218–219; *Brunker v. Cummings,* 32 N. E. Rep. 732; *State v. Tickel,* 13 Nev. 502; *State v. Hardin,* 7 Nev. 381; *State v. Ah Tong,* 7 Nev. 148; *McMinn v. Wheelon,* 27 Cal. 300. "It is immaterial that a prejudicial remark of this kind is not embodied in the form of an instruction." Thompson on Trials, *supra; People v. Bonds,* 1 Nev. 33; *Wheeler v. Wallace,* 53 Mich. 355; *People v. Hare,* 57 Mich. 506; *McDuff v. Evening Journal,* 84 Mich. 1. (6) The first instruction, given at the request of the plaintiff, was erroneous. It told the jury in express terms, if they found the issues for the plaintiff, to find a general verdict for him, although the petition was in three counts. *Pitts v. Fugate,* 41 Mo. 405; *State et al. v. Dulle et al.,* 45 Mo. 269; *Bucher v. Railroad,* 83 Mo. 391. (7) Exceptions are urged to instructions 2 and 3, given at plaintiff's request. "A presumption can not contradict facts nor overcome facts proved." Lawson on Presumptive Evidence, rule 119, p. 576; *Galpin v. Page,* 18 Wall. 364; *Whitaker v. Morrison,* 44 Am. Dec. 627; *Van Buren v. Cockburn,* 14 Barb. 122; 1 Greenleaf on Evidence [14 Ed.], sec. 32. "A rebuttable presumption of law being contested by proof of facts showing otherwise, which are denied, the presumption

loses it value, unless the evidence is equal on both sides, in which case it should turn the scale." Lawson on Presumptive Evidence, rule 120; *Graves v. Colwell,* 90 Ill. 615. (8) Said instruction number 2 is likewise bad, as being a rambling commentary on portions of the evidence, singling out certain facts and telling the jury to consider them. Such instructions are condemned. *Kaiser v. Ins. Co.,* 7 Mo. App. 579; *Miller v. Marks,* 20 Mo. App. 369; *Hopper v. Vance,* 29 Mo. App. 336; *Jones v. Jones,* 57 Mo. 138; *Chouteau v. Iron Co.,* 83 Mo. 73. (9) As to instruction number 4, it is universally held error to authorize a jury to make a given inference from one fact. *Leeser v. Boekhoff,* 33 Mo. App. 223; *Compton v. Baker,* 34 Mo. App. 133; *Chouquette v. Barada,* 28 Mo. 491; *Hoffman v. Perry,* 23 Mo. App. 20; *Anderson v. Kincheloe,* 30 Mo. 520; *Rose v. Spies,* 44 Mo. 20; *Peters v. Bowmean,* 22 Ill. App. 177. (10) The court erred in refusing instructions 2, 6 and 9, requested by appellants, to the effect that negligence, carelessness and want of ordinary care on the part of the directors, afforded no ground of recovery. *Cahn v. Reid et al.,* 18 Mo. App. 115; *Raysdon v. Trumbo,* 52 Mo. 35.

*L. F. Parker* and *Sebree & Tatlow* for respondent.

(1) There was no error in the action of the court with reference to the application for a change of venue. *Krutz v. Howard,* 70 Ind. 174; 42 Howard Pr. 481; *Marston v. Simpson,* 54 Cal. 189. The point is not saved in the motion for a new trial. *Ray v. Thompson,* 26 Mo. App. 431 at 437; *Kolt v. Perteet,* 101 Mo. 215 at 217; *Grocery Co. v. Day,* 54 Mo. App. 419. (2) There was no motion to remand the case to Greene county—the motion was to remand the case as to the defendants filing the motion, which was equivalent to an application for a severance, and this was a matter

resting clearly within the discretion of the trial court, and, it not appearing that this discretion was abused, its exercise will not be reviewed. R. S. 1889, sec. 2134; *Hunt v. Railroad*, 14 Mo. App. 161 at 164; *Price v. Reed*, 38 Mo. App. 489 at 498; *Valle v. Pecton*, 91 Mo. 207 at 216, and cases cited. (3) The by-laws of this bank were admissible. 1 Greenleaf on Evidence, sec. 493; R. S. 1889, sec. 4847. (4) No objection was made or exception saved to the testimony of Sanford as to the appraisement. The testimony of Peale was hearsay and inadmissible. (5) The remark of the trial judge was not improper. As the testimony was wholly inadmissible and should have been excluded by the court, and no remark made by him with reference to it can be alleged as error. (6) The fact that the verdict is a general one, instead of a special verdict on each count, is not made ground for a motion for a new trial and hence is waived. *Sweet v. Maupin*, 65 Mo. (see opinion on motion for rehearing, page 70); *Persinger v. Railroad*, 82 Mo. 196 at 199; *State ex rel., etc., v. Sott*, 104 Mo. 26 at 35. (7) Instructions 2 and 3 correctly state the effect of a *prima facie* case. 1 Greenleaf on Evidence, sec. 34. (8) The objection to instruction number 2 is not well taken; like instructions have been before the supreme court often and always approved. *Musser v. Adler*, 86 Mo. 445; *Beatty et al. v. Hill*, 60 Mo. 72 at 77; *Coleman v. Drane*, 116 Mo. 388 at 395. (9) Instruction number 4 correctly stated the law. (10) Where plaintiff makes out a *prima facie* case which defendant must rebut, then it can not be taken from the jury, it matters not how strong defendant's rebuttal evidence is. *Hepsley v. Railroad*, 88 Mo. 348; *Bretton v. St. Louis*, 120 Mo. 437.

SMITH, P. J.—This is an action founded on sections 2760 and 2761 of Revised Statutes. The defend-

ants Burlingame, Parce and Newman, were respectively president, vice-president and cashier of the Bank of Commerce of Springfield, and, together with the other defendants, constituted the board of directors thereof. The petition contained three counts and alleged in substance that the said bank was insolvent and that defendants, as officers thereof, received the several deposits of plaintiff in said bank (amounting in the aggregate to the sum of $2,500), after they had knowledge of the fact of the insolvent condition of their said bank.

It appears that Burlingame made an application for a change of venue on the ground of prejudice of the inhabitants of the several counties composing the circuit, which application was sustained and, against the objections of the other defendants, the venue was changed to the circuit court of Jasper county, where the objecting defendants appeared and moved the court to remand the case as to them, to the circuit court of Greene county, for want of jurisdiction, which motion was by the court denied. The appealing defendants then next filed an application for a change of venue of the cause from Jasper county, on the ground of undue influence of the plaintiff over the inhabitants of that county. This was also denied. There was a trial in which defendants fully participated and which resulted in judgment for the plaintiff, and to reverse which defendants have appealed.

I. The question most discussed here is whether the action of the Greene circuit court in awarding the change of venue of the cause upon the application of one of the defendants alone, over the objections of the others, who refused to join therein, was proper. We are relieved of an examination of this question by the acts of the defendants themselves. If, after the motion to remand the cause, on account of the want of jurisdiction, had been denied the defendants, they had

not appeared and contested the case on the merits, they would be in a position to question the regularity of the action of the circuit court of Greene county, in awarding the change of venue and consequently the acquisition of jurisdiction by that of Jasper county. But by applying to the latter court for a change of venue themselves, and subsequently proceeding to the trial of the case on the merits they must be deemed to have waived all manner of objection to the proceeding by which the jurisdiction was acquired by the court in which the judgment was given. The Jasper circuit court is one of general jurisdiction. The action is personal, or transitory, in its nature, and, therefore, that court could acquire jurisdiction of it, by the voluntary appearance of the parties. *Fields v. Maloney*, 78 Mo. 179; *Stearns v. Railroad*, 94 Mo. 317; *Moore v. Railroad*, 51 Mo. App. 504.

It has been held that when a defendant files an application for a change of venue, this is an appearance in the cause. *Feedler v. Shroeder*, 59 Mo. 364. The voluntary appearance of the defendants during the progress of the cause, subsequent to its removal to Jasper county, gave the circuit court of that county jurisdiction over their persons, and any informality in the application for the change of venue was thereby waived. *Powers v. Browder*, 13 Mo. 155; *Hembree v. Campbell*, 8 Mo. 572.

In Work on Jurisdiction of Courts, section 22, it is stated that: "The effect of a general appearance, after having appeared specially and made objection which has been overruled, is the same as if no objection had been made. By appearing afterward and contesting the case on the merits, a defendant loses his right to contest the ruling of the court below on his objection to the jurisdiction on appeal. If a party wishes to insist upon the objection that he is not

in court, he must keep out for all purposes, except to make the objection." And in a subsequent section— section 34—of the same work, it is stated that, if, after the defendant's objection to the jurisdiction is overruled and he thereafter pleads to the merits, or does any other act that can only be done by one in court, his objection to the jurisdiction, although erroneously overruled, is thereby waived. And this statement of the law finds abundant support in these adjudications: *Dailey v. Kennedy*, 64 Mich. 208; *Railroad v. DeBusk*, 12 Col. 294; *Walker v. Turner*, 27 Neb. 103; *Lowe v. Stringham*, 14 Wis. 222; *Blackwood v. Jones*, 27 Wis. 498; *Sealy v. Lumber Co.*, 19 Ore. 94; *Sugg v. Thornton*, 132 U. S. 524. The irregularities complained of in the application for, and the awarding of, the change of venue, having been waived by defendants, we are precluded from determining what would have otherwise been their effect.

II. It inevitably results from the conclusion reached in the preceding paragraph, that the irregularity complained of in respect to the granting of the change of venue by the circuit court of Greene county, being waived by defendants, the same must be regarded as if it had never existed and the jurisdiction of the circuit court of Jasper county over the subject-matter and the parties as complete as if the proceeding for the change of venue had been in every particular formal and regular. The case must be considered in the circuit court of Jasper county as if it had been regularly removed there by change of venue on the application of the defendants. The defendants must be deemed to have had granted to them one change of venue, and such being the fact, they could not have another. R. S., sec. 2258. And, therefore, the circuit court did not err in refusing the same.

III.  The petition discloses but one issue between plaintiff and all the defendants.  Under the statute, the case was not one authorizing a severance.  R. S., sec. 2131.  And, if there had been, the question was one lying largely in the direction of the trial court, with which we can not interfere, unless it appeared there had been an abuse of its exercise, which we do not find is the case here.  *Hunt v. Railroad*, 14 Mo. App. 160; *Price v. Reed*, 38 Mo. App. 489; *Valle v. Picton*, 91 Mo. 207.

IV.  At the trial, the plaintiff was permitted, over the objections of the defendants, to read the deposition of E. L. Sanford, assignee of the defunct Bank of Commerce, which had been taken by defendants.  The deponent in this deposition was asked by the defendants if he had in his possession, as such assignee, the by-laws of the bank, and if so, to read therefrom section 8, which he accordingly did, and it is as follows, to wit:  "It shall be the duty of the president, vice-president and cashier to be at the bank each day that it is opened for business and a majority of them shall have power to approve or reject any bonds or obligations offered for sale or discount, and may approve or reject any loans parties may desire to make with the bank."  And also to further read section 10, which is as follows, to wit:  "Whenever called upon for that purpose, the officers of the bank shall exhibit to the board of directors, or to a committee appointed by them and under their authority, all the books, papers, records and other matter under their control and belonging to the bank, and shall make an exhibit showing the exact financial condition of the bank; the showing shall always be made at the meeting of the directors held on the second Tuesday in January each year, when it shall be the duty of the board to pass upon the business and concerns of the bank."

The statute (section 4847) has so far relaxed the rule in respect to the production of records and papers on file in the office of any incorporated company, as to allow certified copies thereof to be received as *prima facie* evidence. But the bank was defunct, and there was neither secretary nor other officer authorized to certify to a copy of its by-laws. The records of the bank were in the custody of the circuit court of Greene county, through the assignee, and this, no doubt, was an excuse for the nonproduction of the same in another court. It is difficult to see why sworn copies thereof, in such case, were not admissible. But, since the defendants themselves resorted to this method of proof of the contents of the original records of the bank, in their depositions, it is not perceived upon what ground they could be heard to complain of the action of the court. They took the deposition and filed it in the court. The plaintiff was present at the taking of it and cross-examined the witness, and, had defendants not proved the existence of these by-laws, as was done without objection, it may be presumed the plaintiff would have taken steps to have done so himself, in that or some other way. To permit the defendants to object to the manner of proving the by-laws which they had adopted themselves, and to exclude the same on that ground would visit upon plaintiff a hardship, to which we can not give our sanction.

Again, the defendants further object to the introduction of the said by-laws, for the alleged reason that they did not tend to prove the bank was insolvent, when the deposit was made, or the defendant's knowledge of such insolvency. It was competent for plaintiff to prove any fact or circumstance which had a tendency to prove knowledge on the part of defendants of the condition of the bank. The by-laws in question tended to prove that it was the duty of the defendants

to supervise and "pass upon the business and concerns of the bank." If the evidence tended, as we think it did, to establish the opportunity and duty of defendants to know the condition of the bank, then these were facts from which the jury, in connection with other facts which the evidence tended to prove, had a right to infer actual knowledge of the insolvent condition of the bank at the time of the reception of the deposits. Actual knowledge, like any other fact, may be proved by direct evidence, or inferred from facts and circumstances; but, whether proved by direct evidence, or inferred from other facts, it is actual knowledge. *Alcorn v. Raiload*, 108 Mo. 93; *Francis v. Railroad*, 110 Mo. 397; *Abbe v. Justus*, 60 Mo. App. 300.

V. As to the objection that the testimony of witness Sanford, as to the contents of the appraisement of the property turned over to the bank by certain of the defendants, and the petition filed by the assignee for leave to compromise certain indebtedness due the bank, was incompetent; it is sufficient to say, that no exceptions were saved to the ruling of the court in admitting the same.

VI. The testimony of witness Hefferman to the effect that, if a bank was managed properly, the directors could very easily ascertain its condition, was improper as being the mere opinion of the witness, but we can not see that its admission in any way seriously prejudiced the defendants.

VII. No error is preceived in the action of the court in refusing to permit the defendants to prove their own several declarations in respect to the condition of the bank, after its failure. If the plaintiff had offered to prove any declaration of defendants, tending to show their knowledge of the insolvent condition of the bank, then the defendants would have had the right to prove

all they then said in respect to the matter. But we know of no rule that would permit defendants to prove their own declarations, made to each other, or to strangers, after the failure of the bank, in respect to its condition, or their knowledge thereof.

VIII. The court refused to permit defendants to prove, by certain witnesses, that before the failure of the bank, they endeavored to purchase shares of its stock and that they offered one of the defendants more than par for his, which was refused. This was possibly competent, to show the ignorance of the condition of the bank by the defendant declining to sell his stock. But, since the court later on permitted the defendants to testify that they had been offered above par for the stock, and had refused the same, we do not feel, in view of this, that the ruling of the court was injurious to defendants.

There are a great number of other objections urged to the rulings of the court, in admitting and rejecting testimony, which, to notice *seriatim*, would require us to extend this opinion beyond any reasonable limits. It is, perhaps, sufficient to say that the various points of objection just referred to are without merit and can not be sustained.

IX. Nor is there any merit whatever in the objection urged to the remark of the trial judge, to the effect that, in view of the statement that witness Lincoln had not talked with the other directors, between the month of March, when the deposit was made, and that of June, when he drew out his deposit, that "he would have to know the condition of the bank by intuition, if he knew it at all, or if he knew it at one time and not at another." What the court meant to say by this collocation of words, is quite difficult to understand. Counsel have failed to enlighten us as to that. We do not think, however, that there was

anything in the utterance of the court that was, in the least, unfavorable, or harmful, to the defendants.

X.   The first instruction given for plaintiff told the jury that if they found the issues for him, to assess his damages in a gross sum.   The plaintiff made three several deposits in the bank at different dates.   The petition contained three counts for the recovery of each deposit.   In accordance with the instruction, the jury, in their verdict, made a general finding for plaintiff on all three counts.   There was no separate finding on each.   The defendants contend that the instruction should have advised the jury, if they found for plaintiff, to find separately on each cause of action, instead of advising them to find thereon generally.   The plaintiff's answer to this is, that the objection is not specified in the motion for a new trial.   In this the plaintiff is mistaken.   It is true that the motion does not pointedly allege as an objection to the verdict, that the finding is a general one and not a finding on each of the three counts of the petition.   Repeated decisions of the appellate courts have conclusively established the rule that they will not reverse a judgment because there was not a finding on each count, unless attention of the lower court was specially called to the matter by an appropriate motion. *Mooney v. Kennett*, 19 Mo. 551; *Clark v. Railroad*, 36 Mo. 215; *Pitts v. Fugate*, 41 Mo. 405; *State v. Dulle*, 45 Mo. 269; *State v. Rucker*, 59 Mo. 17; *Brady v. Connelly*, 52 Mo. 19; *Sweet v. Maupin*, 65 Mo. 65; *Bricker v. Railroad*, 83 Mo. 391; *State v. Scott*, 104 Mo. 27; *Griggs v. Deal*, 30 Mo. App. 152; *Erdbruegger v. Meier*, 14 Mo. App. 258.

Had it not been for the defendants' objection to the plaintiff's first instruction, the question as to the sufficiency of the finding by the jury would not have been before us.   But, since the objection to the action

of the court in giving said instruction is urged in the motion for the new trial, we are obliged to give it our consideration. The defendants were entitled to have the jury pass upon each cause of action alleged against them. It may well have been that the bank was solvent when one of the deposits was made and not when either or both of the others were made; or it may have been that the defendants, or some one or more of them, had knowledge of the insolvency of the bank, when the last deposit was, and not when either or both of the prior ones were, made. Anyway, the defendants had a right to have the jury pass upon each of the disputed causes of action and to show by their verdict that they had done so. An instruction, therefore, that directed them to ignore this right of the defendants is erroneous, and especially so when it appears, as in this case, that the jury followed the direction given them by the court.

XI. The defendants object that plaintiff's second and third instructions are erroneous. They directed the jury (2), that it only devolves upon the plaintiff to show that the Bank of Commerce was insolvent, or in failing circumstances, and that while in such condition the plaintiff deposited in said bank his money, and from these facts alone and without other testimony, the law presumes both knowledge and assent on the part of the officers of the bank and on the part of each of them; and it devolves upon such defendants to show that they did not have such knowledge, or that they did not so assent, and if the jury find from the evidence that the Bank of Commerce was, in March, 1893, insolvent or in failing circumstances, as these terms are defined in other instructions, and that while in such condition plaintiff deposited in said bank $2,500, and that defendants were then directors in said bank, they will find for the plaintiff against all defend-

ants who were then directors, unless they further find from the evidence that the defendants, or some one or more of them, did not have such knowledge or did not so assent, and in determining and ascertaining the want of knowledge on the part of said defendants, in addition to considering the positive testimony relating to this fact, you will take into consideration the presumption that the law authorizes that said officers and directors did have such knowledge, and that they did so assent, as well as all the surrounding facts and circumstances, and the opportunity that the defendants had of ascertaining such facts (if you believe from the evidence that they did have such opportunity) and the fact, if proven that it was their duty to examine into, and pass upon, the business and concerns of the bank, the reasonableness and unreasonableness of their lack of knowledge of such facts, as well as the probability or improbability of their lack of knowledge of the existence of such facts, and you are instructed that you are the sole judges of the credit to be given to such witness' testimony, and you will take into consideration the interest, if any he may have, in the result of this action, as well as all the circumstances and facts in evidence, and if you believe that any witness has willfully sworn falsely as to any material fact in the case, then you are at liberty to disregard the whole or any part of his testimony, and with these rules, together with all you have heard and seen at the trial, you are to determine from the evidence whether or not the evidence shows that the defendants did not have knowledge of the bank being insolvent or in failing circumstances, as heretofore defined; and, unless you do so find from the evidence, you will find the issues in this case for the plaintiff.

(3) The jury is instructed that the presumption arising from the statutes that the officers and directors

of a bank which is shown to have received deposits while insolvent or in failing circumstances, assented to such deposits, with the knowledge of such insolvent condition and of such failing circumstances, is to be taken into consideration by them as a matter of evidence which they will weigh in connection with all the other facts and circumstances in the case, the same as they would weigh any other evidence in the case.

It is defendant's contention that the said instructions, not only declare that the insolvency of said bank at the time of the reception of the deposits, is *prima facie* evidence that the directors knew of such insolvency and assented thereto, but that these facts raise a presumption against the innocence of such directors. The law defines the nature and amount of the evidence which it deems sufficient to establish a *prima facie* case and to throw the burden of proof on the other party, and if no opposing evidence is offered, the jury are bound to find in favor of the presumption. 1 Greenleaf Evidence, sec. 32. A rebuttable presumption of law being contested by proof of facts showing otherwise, which are denied, the presumption loses its value, unless the evidence is equal on both sides, in which case, it should turn the scale. Lawson on Presumptive Evidence, rule 120. In *Graves v. Colwell*, 90 Ill. 615, it was said: "The plaintiff made out a *prima facie* case by availing himself of the presumption of law that the father, and not the son, was intended by the deed from French. It then devolved upon defendants to introduce evidence sufficient to rebut this legal presumption, and, as they did so, they would have been entitled to a verdict, if the case had stood still there. The case of the defendants, as disclosed by their testimony, considered in and of itself, rebutted the legal presumption, and thereby the *onus* was shifted back to plaintiff, and he was bound to produce proofs sufficient to overcome, or

at least equal in probative force, the case of the defendant. Plaintiff did introduce certain rebutting evidence, and, he having done so, the verdict of the jury should have been in conformity with the preponderance of evidence on the whole case. If the testimony of defendants was of greater probative force than the rebutting evidence of plaintiff added to the probative value of the legal presumption, then the verdict should have been for them. If the evidence in the concrete case, including the evidential weight of the presumption of law, was in equilibrium, then the plaintiff might still have availed himself of the presumption of law, as an arbitrary rule of law, and been entitled to recover. It has been said that the presumptions of law derive their force from *jurisprudence* and not from *logic*, and that such presumptions are arbitrary in their application. This is true of irrebuttable presumptions, and, primarily, of such as are rebuttable. It is true of the latter until the presumption has been overcome by proofs and the burden shifted; but, when this has been done, then the conflicting evidence of the question of fact is to be weighed and the verdict rendered, in civil cases, in favor of the party whose proofs have most weight, and in this latter process the presumption of law loses all that it had of mere arbitrary power, and must necessarily be regarded only from the standpoint of logic and reason, and valued and given effect only as it has evidential character. Primarily, the rebuttable legal presumption affects only the burden of proof, but if that burden is shifted back upon the party from whom it first lifted it, then the presumption is of value only as it has probative force, except it be that on the entire case the evidence is equally balanced, in which event the arbitrary power of the presumption of law would settle the issue in favor of the proponent of the presumption. Regarded in its evidential aspect,

a given presumption of law may have either more or less of probative value, dependent upon the character of the presumption itself, and upon the circumstances of the particular case in which the issue may arise."

*Van Buren v. Cockburn,* 14 Barbour, 122, was where the trial judge had, in effect, charged that "although ordinarily when all the requisites of the statute have been complied with, in the execution of a will, the presumption of law is that the instrument produced is the will thus executed, yet when it is made to appear that the will has been altered or changed, the presumption that it is the same paper which was executed disappears." In reviewing this charge, the revisory court remarked that "the charge was correct and that it was a simple question of fact to be decided by the jury upon the evidence uncontrolled or unembarrassed by any presumption one way or the other."

The plaintiff made out his *prima facie* case, by the introduction of evidence tending to establish the insolvent condition of the bank at the time of the reception of the deposits, and, summoning to his aid the presumption of the law arising thereon, namely, that the defendants, as officers of the bank, had knowledge of such insolvency and assented to the reception of the deposits. This cast upon the defendants the burden of rebutting the plaintiff's *prima facie* case. The defendants offered no evidence tending to rebut the plaintiff's proof of the insolvency of the bank. But they did introduce evidence to rebut the presumption of knowledge. They testified that they did not know of the insolvent condition of the bank at the time of the reception of the deposits, which they supplemented with evidence of corroborating facts and circumstances. If the case had been submitted to the jury on this state of the evidence, without any further showing, it would have been the duty of the jury, according to the New York

case just cited, to determine, unembarrassed by any legal presumption whether the defendants did not have knowledge of the insolvent condition of the bank at the time of the receipt of the deposit. But the defendant's evidence was sufficiently strong to shift the burden back upon the plaintiff. The plaintiff thereupon introduced further evidence tending to show that it was not only the duty of the defendants to know the condition of their bank at the time of the receipt of the deposit but, that they had opportunity to know, coupled with evidence of a variety of facts and circumstances from which the inference of knowledge was fairly deducible.

The conflicting evidence on the question of knowledge of the defendants thus appearing, it was to be weighed by the jury and a verdict rendered in favor of the party whose proofs had the most weight, and in this process the presumption of law lost all that it had of mere arbitrary power and was necessarily to be regarded only from the standpoint of logic and reason and valued and given effect only as it had evidential character. Regarded in its evidential aspect, its probative value was dependent upon its own character and upon the circumstances of the case. If, on the entire case, the evidence was equally balanced, the presumption would preponderate the scale in favor of the plaintiff. Accordingly, upon the whole case, the jury, in determining the issue of defendant's knowledge by the weight of evidence, were authorized to give the presumption whatever probative force they deemed it entitled to. Its evidentiary character must not be ignored in determining this issue. It will, therefore, be seen that while the plaintiff's instructions are not as clear and logical in their statement as they might have been, still they, in general, accord with the views of the law we have expressed. We are unwilling to

condemn the action of the court in giving plaintiff's said instructions.

XII.   The plaintiff's fourth instruction told the jury that if the bank was doing a general banking business and publicly soliciting and receiving deposits with the knowledge and assent of the defendants, at the time of the making of plaintiff's deposits, then the jury might infer from such facts that defendants assented to the reception of the deposits though they had no actual knowledge of the particular deposits made by plaintiff.   While the inference which this instruction authorized seems to us to be a fair and natural one, still it was, perhaps, improper for the court to so expressly direct the jury.   When one or more facts are merely used to show the existence of another fact, which is to be found by the jury, the court can not by an instruction direct the jury that the inference is warranted.   The law presumes the jury more competent to draw it than the judge.   *Chouquette v. Barada*, 28 Mo. 491; *Smith v. Telegraph Co.*, 57 Mo. App. 259; *Leeser v. Boekhoff*, 33 Mo. App. 233.

XIII.   No error is perceived in the action of the court in refusing the defendants' second, sixth and ninth instructions.   From what has been said in paragraph four of this opinion, it will appear why we think the defendants' refused instructions were not proper.   Besides this, the others given for them presented a full and fair expression of the whole law applicable, under the pleadings and evidence, to their side of the case.

No error appears in the action of the court in giving or refusing any of the instructions, except in giving those already indicated, on account of which, the judgment is reversed and the cause remanded. All concur.