## BARKLEY CEMETERY ASSOCIATION, Appellant, v. McCUNE, Trustee, Respondent.

### St. Louis Court of Appeals, May 8, 1906.

1. **ATTORNEYS: Authority.** An attorney at law is an officer of the court and is not required to prove that he is authorized to appear in a particular case; where the defendant in an action brought by a corporation denied the authority of the plaintiff's attorney, the testimony of one director to the effect that the attorney for the plaintiff was not authorized to bring the suit was insufficient to overcome the presumption of authority and a finding by the trial court in favor of such authority was warranted.

2. **TRUSTS AND TRUSTEES: Removal of Trustee.** Where the trustee of a fund for the benefit of a cemetery association removed from the neighborhood so that he had no further interest in the cemetery, and devoted no time or expense to its improvement or preservation, and charged two per cent per annum on the capital of the fund in his hands as a commission for managing the same, this was a failure to execute his trust and a misappropriation of the fund and warranted a removal of the trustee.

Appeal from Ralls Circuit Court.—*Hon. David H. Eby,* Judge.

REVERSED AND REMANDED (*with directions*).

*Roy & Hays* and *Ben E. Hulse* for appellant.

*David Wallace* and *Allison & Allison* for respondent.

BLAND, P. J.—Plaintiff was incorporated, under the general laws of the State, November 4, 1889, with a capital stock of one hundred and fifty shares, of the par value of ten dollars per share. Mathew T. Barkley was the owner of one hundred and forty-six shares. James P. Wood, Alexander C. James and Judge Reuben F. Roy, and defendant J. R. S. McCune, each owned one share. The stock was non-dividend paying, and the stockholders named above composed the first board of directors. Barkley was president of the board. On August 16, 1890, Barkley made his last will, by which he devised to McCune, as trustee, the one hundred and forty-six shares of his stock in the association, and other personal property aggregating over and above the value of the stock, the sum of $21,747.82 in trust for the association. The devise and its purpose are thus expressed in items 17, 18 and 19 of the last will of Barkley:

"Item 17. I hereby give and bequeath to James R. S. McCune, as trustee in trust and to his successors in this trust forever, for the use and benefit of Barkley Cemetery Association, all of my 146 shares of membership in said Barkley Cemetery Association. Said trustee and his successors shall receive said 146 shares or memberships and shall vote the same at all meetings of the stockholders or boards of directors of said association with the same force and effect as though I were personally present and voting said memberships myself, and in all respects to look after the general welfare of said Association with the same care and diligence that I would do were I living.

"Item 18. I hereby give and bequeath to J. R. S. McCune, as trustee in trust and to his successors in this trust forever for the use and benefit of Barkley Cemetery Association, all of my bank stocks, or shares in the capital stock of any and all banks. Said trustee and his

successors shall receive in charge said bank stocks and shall vote said stocks at all meetings of said banks with the same force and effect as though I were personally present and voting the same myself. Said trustee shall also receive any and all dividends on said bank stocks and shall pay the same, that is to say said dividends, forthwith to the treasurer of Barkley Cemetery Association, to be used by said Cemetery Association according to its articles of incorporation thereof.

"Item 19. In order to further provide for the permanent endowment of Barkley Cemetery Association, a charitable and benevolent association, founded principally by me, I give and bequeath to J. R. S. McCune as trustee and to him and his successors in trust for the use and benefit of Barkley Cemetery Association forever all the rest, residue and remainder of my estate not hereinbefore specially bequeathed. Said trustee shall receive from my executors said above mentioned residue and remainder of my estate and shall with all diligence invest the same in prime stocks, bonds or real estate security, and he and his successors shall keep the same invested or re-invested and out of the annual interest, dividends or profits arising from such investments, said trustee shall pay all costs, expenses, fees and commissions allowed by law or order of the court for the management and annual settlement of the trust estate created in the seventeenth, eighteenth and nineteenth items of this my last will, and the remainder of said annual interest, dividends or profits arising from such investments shall be paid over by said trustee each and every year to the treasurer of Barkley Cemetery Association to be by said association used in improving and ornamenting said cemetery. It being expected by me that a reasonable portion of said funds will always be used by said Association in beautifying and adorning Barkley Block in said cemetery."

As its name indicates, the purpose of the associa-

tion was to maintain and care for a cemetery. The ground of the cemetery is located near the city of New London, in Ralls county, and was donated to the Association by Barkley. After Barkley's death, his executor, in the year 1893 and 1894, paid over to McCune, as trustee, the sum of $21,747.82, and transferred and delivered to him one hundred and forty-six shares of stock in the association.

This proceeding is to remove McCune, as trustee, and appoint some other person in his stead. The grounds assigned for his removal are as follows:

"That at the time of the making of said last will and testament said James R. S. McCune was a resident of said city of New London, Missouri, and a stockholder in said association, and owned a lot for interment purposes in said cemetery.

"That since the making of said last will and prior to the death of said Mathew T. Barkley, to-wit, on or about the first day of January, 1892, the said James R. S. McCune moved his place of residence from said city of New London to the city of Bowling Green, Pike county, Missouri, twenty-five miles distant, where he has ever since resided and now resides, and that said trustee has ever since said last-named day ceased to be interested in the welfare of said city of New London, and the community around it or in the welfare of said cemetery, and that ever since said removal of his place of residence said James R. S. McCune has entertained a feeling of dislike and enmity toward the community of said city of New London, which feeling of dislike and enmity is in great measure reciprocated by said community, and that the owners of lots in said cemetery are opposed to said McCune remaining as such trustee.

"That by said last will and testament there was also devised to said James R. S. McCune as trustee one hundred and forty-six shares of the capital stock of said association in trust for the use and benefit of said Bark-

ley Cemetery Association and to vote the same at all meetings of the stockholders or board of directors of said association.

"That the entire capital stock of said association consists of one hundred and fifty shares of the nominal par value of ten dollars per share, which said stock is non-dividend paying, said corporation being a purely charitable institution. That said one hundred and forty-six shares of said stock are now held by said McCune as such trustee.

"That the remainder of said capital stock is held as follows: One share by John S. Wood, one share by said James R. S. McCune, and one share by Alexander C. James, and one share by Reuben F. Roy, and that the fact that said trustee resides remote from said city of New London is the source of great inconvenience and annoyance in the management of the affairs of said association.

"That since the beginning of said trust said association has received from said trust fund the sum of about eighty-seven hundred dollars, while the amount of compensation claimed by said trustee up to the date of the filing of his last annual settlement herein, to-wit, on the ——day of October, 1902, is about the sum of thirty-nine hundred dollars, an amount grossly in excess of reasonable compensation to said trustee for his services.

"Your petitioner further states that a suitable trustee resident of said community of New London can be found who will discharge the duties of said trusteeship under good and sufficient bond and without compensation of any kind."

The answer admits the facts above stated, denies all other allegations of the petition, and denies the authority of the attorneys for plaintiff (Roy and Hayes) to file the petition or prosecute the suit.

The court heard the evidence, found the issues for the defendant, denied the application of the plaintiff to remove defendant, as trustee, and rendered judgment against the association for costs.

1.   James P. Wood died after the death of Barkley, and his brother, John S. Wood, became and now is the holder and owner of the one share of stock issued to James P. Wood, and is also a director of the association and secretary and treasurer of the board. Wood testified that the board of directors had not directed this suit to be brought, and that he had never been consulted about it and had never given his consent to the bringing of the suit. He also testified that since the death of Barkley there had been but four stockholders in the association and consequently but four directors (the charter provides for five directors), that McCune, James, Roy and himself constituted the board and they met, as a rule, once a year. James was not called as a witness by either party. On this evidence, the defendant insists that the suit was not authorized by the association, and for this reason should have been dismissed. An attorney at law is an officer of the court and is not required to produce a warrant of attorney to show that he is authorized to bring a particular suit or to appear as an attorney in any case pending in the court. His professional obligations raise the presumption that he has such authority. [Valle v. Picton, 91 Mo. 207, 3 S. W. 860; Robinson v. Robinson, 32 Mo. App. 88.] Defendant introduced evidence to overcome this presumption. The trial court must have found this issue against him, since the judgment shows on its face that the court disposed of the case on its merits, which it could not have done had it found the suit was not authorized by the plaintiff. We are not disposed, nor do we feel justified, on the slight evidence introduced by the defendant, to make a contrary finding and dismiss the suit.

2.  The evidence shows that McCune was a resident of New London at the date Barkley executed his will and subsequently, but before Barkley's death, removed from that city to the city of Bowling Green, in Pike county, and since his removal to Bowling Green has continued to reside in that city and has buried his dead there.  The evidence is uncontradicted that McCune is a man of good character and a safe, conservative and experienced business man.  The complaint against him is not that he has mismanaged the trust fund, for he has not lost a dollar of it, or made a single bad investment or loan.  The evidence shows that up to October 27, 1902, the trust fund had earned $10,807.38, of which the defendant has paid to the treasurer of the association $6,112.78, and retained the balance of $4,894.60, or two per cent per annum on the capital of the trust fund as commission; and one of the complaints against him is that his charge for managing the fund are excessive.  His answer to this complaint is that he has made annual settlements in the circuit court of Ralls county and his claims for commissions have been approved by said court. In respect to the time and labor bestowed by defendant in the discharge of his duties as trustee, the evidence shows that the trust fund has been administered by the bank of New London without charge, cost or expense to McCune; that Wood and James, two of the directors of the association, are, respectively, cashier and assistant cashier of the bank, and as such have kept McCune's account, as trustee, with the bank, the depository of the trust fund, paying out the loans from the trust fund over the counter of the bank and receiving and receipting for the payment of interest thereon, with the exception of but two borrowers, who pay interest direct to McCune. The loans of the fund are sometimes negotiated by Wood and then approved by McCune; the others are made by McCune individually.  McCune is a stockholder and vice-president of the New London

Bank and owns property in the city of New London, and makes occasional visits there to look after his business interests. The evidence is that he has never taken any part in the making of plans for the improvement and beautifying of the cemetery grounds, but has contented himself as to these matters by approving, without examination, what the other directors have seen fit to do; and also that he has never visited the cemetery with a view of ascertaining its condition or its needs, or for the purpose of making any suggestion with respect to its improvement. The other directors, especially Judge Roy, have without charge or compensation, given a great deal of time and attention to the improvement of the cemetery grounds. They have erected waterworks, planted trees and shrubbery, had the grounds properly laid off and platted and the burial lots marked by corner stones, and have, according to the evidence, very much beautified and improved the cemetery, which is entered by a gate erected by them at a cost to the association of five hundred dollars. A goodly number of the citizens of New London, owning burial lots in the cemetery, were called as witnesses by the plaintiff. They testified to their dissatisfaction with McCune, as trustee, for the reason he was a non-resident, made exorbitant charges for his services and took no personal interest whatever in the improvement of the cemetery grounds. Judge Roy's testimony is to the effect, that no objections were ever interposed to McCune's settlements, for the reason he denied the right of the other stockholders to make any objections to them, on the ground that he owned practically all the stock of the association. Wood is collaterally related to McCune, and the retention of Wood and James in their respective offices as cashier and assistant cashier of the bank is in a measure dependent on the will of McCune. In view of the very slight services rendered by McCune in managing and controlling the trust fund, his charge of two

per cent per annum on the capital of the trust fund as commission is so grossly excessive as to shock the moral sense, and is, in fact, a misappropriation of the trust fund and, therefore, to a considerable degree, defeats the charitable purpose for which the fund was donated by Barkley. McCune has, evidently either failed to appreciate the spirit and object of the charity, or else his self-interest has out-weighed any consideration of the beneficent purpose of the donor, and with an eye apparently single to making a profit to himself, he has handled this trust fund mostly through the labor and attention of others, to whom he has not paid nor promised to pay anything; in fact, the evidence shows that he dominates both Wood and James, as directors of the association, thus leaving Judge Roy the sole director to oppose his spirit of greed. McCune has performed scarcely any of the labor and work required to take care of and administer the trust, and yet he has received all the compensation, the other directors serving without charge. The charter provides for, and there should be added to the board of directors, one other. This can never be done under present conditions, and it seems to us that the evidence discloses a situation that imperatively demands the removal of McCune, as trustee, if the charity is to be properly administered, and the appointment of some person as his successor, able to furnish an adequate bond, capable from business experience to safely and properly invest the trust fund, and who is so identified with the people in the neighborhood of the cemetery and so appreciative of the beneficent purpose of Barkley as to be willing to serve as trustee for a compensation not to exceed two per cent commission on the interest received on the principal sum of the trust fund. Defendant's able counsel has collated many authorities in respect to the removal of a trustee, and of the compensation allowed in particular cases for the administration of the trust, and upon these

has predicated his argument in defense of McCune. Precedents are useful as guides when the court is in doubt as to the law of the case, or as to what should be done under the facts as developed by the evidence, but where there is no doubt as to the law governing the case and the facts are such as to lead to but one conclusion, precedent is of no moment, and we conclude that the judgment should be reversed and the cause remanded with directions to the trial court to remove McCune, as trustee, and appoint some suitable person in his stead. It is so ordered. All concur.